UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

NORMA JEAN HARRIS, administratrix
of the estate of JAMIE BROOKS HARRIS,

    Plaintiff

v.                                    CIVIL ACTION NO. 2:05-0816

ONYX INDUSTRIAL SERVICES,
Inc., AMERICAN ELECTRIC POWER
SERVICE CORPORATION, a New York
Corporation, APPALACHIAN POWER
COMPANY, a Virginia Corporation,
THE OHIO POWER COMPANY, an Ohio Company
doing business as American Electric
Power, and BABCOCK & WILCOX, an Ohio
Corporation,

    Defendants

<u>MEMORANDUM OPINION AND ORDER</u>

       The following motions are pending before the court;

(1) the motion on behalf of Miranda Stamper, filed January 19,

2007, seeking to intervene in this action; and (2) the motion of

defendant Onyx Industrial Services, Inc. ("Onyx"), filed February

2, 2007, seeking to enforce and consummate the settlement between

plaintiffs and all defendants.[1]

---

     [1] Pending also are the following three motions, all of which
are ORDERED granted: (1) the motion of Onyx, filed February 16,
2007, seeking leave to file a surresponse to Stamper's motion to
intervene, (2) the plaintiff's motion, filed February 19, 2007,
seeking leave to join in Onyx's motion for leave to file a

1

The following petitions are also pending: (1) B&W's petition, filed February 14, 2007, seeking approval of the settlement of plaintiff's claims, (2) the petition and application of plaintiff, filed February 14, 2007, seeking court approval of resolution of the deliberate intention claims; (3) the petition of plaintiff, filed February 14, 2007, seeking court approval of the wrongful death settlements; and (4) the petition of American Electric Power Service Corporation, Appalachian Power Company, and the Ohio Power Company ("power company defendants"), filed February 21, 2007, seeking approval of the wrongful death claims asserted against them.

I.

A.  Background

This case arises out of an industrial accident that

---

surresponse, and (3) the plaintiff's motion, filed February 28, 2007, seeking leave to supplement her joinder in Onyx's motion to file a surresponse.

Pending as well are the following two motions, both which are ORDERED denied in view of the disposition of the matters otherwise addressed in this order: (1) the motion of defendant Babcock and Wilcox ("B&W"), filed February 2, 2007, seeking a status conference in this action and (2) the motion of plaintiff administratrix to join therein, filed on February 19, 2007.

occurred on March 12, 2004, at a power plant in Putnam County, West Virginia.  On that day, Jamie Harris fell to his death in a twenty-six foot vertical shaft located in a fan duct at the plant.

The power plant where the accident occurred was allegedly owned and/or operated by the three power company defendants.  At the time of the accident, Jamie Harris was employed by defendant Onyx, a contractor retained by the power company defendants for general plant maintenance work.  B&W was a separate contractor for the power company defendants that was performing construction work at the power plant at the time of the accident and had allegedly performed work in the area where the accident occurred.

Jamie Harris died intestate and without children.  At the time of his death, he was engaged to be married to Ms. Miranda Stamper, with whom he had been living for seven years.

B.  Institution of Actions

Plaintiff Norma Jean Harris, the mother of Jamie Harris, was appointed administratrix of the estate of Mr. Harris on March 18, 2004.  She instituted this action in the Circuit Court of Putnam County, West Virginia, in August of 2005, and the

3

action was subsequently removed to federal court in October of
2005.  With respect to Onyx, in her first amended complaint Mrs.
Harris alleges Onyx violated the West Virginia deliberate
intention statute, W. Va. Code § 23-4-2.  Within the count in
which the deliberate intention claim is stated, Mrs. Harris
represents that she was dependent, in part, on the earnings of
Jamie Harris.  (Am. Compl. ¶ 16.)  Additionally, Mrs. Harris
asserts wrongful death claims against the power company
defendants and B&W contending that these defendants failed to
provide Jamie Harris with (1) a safe place to work, (2) adequate
safety information, and (3) adequate warnings of the dangers
associated with the work he was performing.  The defendants
assert a number of cross-claims in this action.  Notably, the
power company defendants and B&W seek indemnification from Onyx.

According to Ms. Stamper, she initially believed that
counsel for Mrs. Harris would work for the benefit of both her
and the parents of Jamie Harris (Mrs. Harris and her husband Carl
Harris), but Mrs. Harris instituted this action separate and
apart from Ms. Stamper.[2]  Ms. Stamper subsequently retained

---

[2] Ms. Stamper has attached a letter from Brent K. Kesner,
counsel for Mrs. Harris in her capacity as administratrix.  This
letter is addressed to counsel for Ms. Stamper and is dated
September 23, 2005.  It states in pertinent part

4

separate counsel to represent her, and on November 18, 2005, she

instituted a deliberate intention action against Onyx and a

management employee at Onyx allegedly responsible for the safety

of Jamie Harris.  No other defendants were named in Ms. Stamper's

state court action.  In her complaint, Ms. Stamper maintains that

she "is the sole dependant of the decedent, Jamie Harris."  She

further asserts that she and Jamie Harris had been living

together since 1999, she and Jamie Harris co-mingled all of their

assets and checking accounts, she was attending college at the

time of the death of Jamie Harris, and she was being supported in

part by Jamie Harris.

C.   Purported Settlement of this Action

        In the pretrial conference held with the court on

January 3, 2007, the court was informed that the entirety of the

action had been resolved.  Under the terms of the purported

settlement, Onyx agreed that the plaintiff may take judgment

_____

Review of the relevant laws with respect to deliberate
intent claim [sic] indicates that your client [Ms.
Stamper] is not an appropriately named party to such
an action.  As I read the Workers Compensation law and
statute, it appears that financially dependent family
members are the appropriate parties.  It is clear that
your client [Ms. Stamper] may have a claim for status
of the beneficiary of the estate in connection with
the wrongful death action.  Any such action is
properly brought in the name of the administratrix.

5

against it in the amount of $1,000,000 for resolution of the
deliberate intention claims asserted against it and further
agreed to pay an additional $120,000 in "costs, interest, and
attorney fees."[3]  (Docket Entry 352, Proposed Order.)  Respecting
the wrongful death claim asserted against B&W, under the terms of
the purported settlement, plaintiff will receive the sum of
$75,000 from B&W and will also receive an additional $305,000
from Onyx on behalf of B&W.  As for the power company defendants,
Mrs. Harris will receive $275,000 from Onyx on behalf of the
power company defendants for settlement of the wrongful death
claims asserted against these defendants.[4]

---

[3] Counsel for the adminstratrix has subsequently represented
that the $120,000 sum was only for costs.

[4] On March 30, 2007, Onyx filed a motion seeking "entry of
an order staying interest."  By way of motions filed April 12 and
13 of 2007, B&W and the power company defendants seek to join in
this motion.

In Onyx's motion it represents that in accordance with its
agreement with Mrs. Harris it has tendered $1,120,000 to Mrs.
Harris which she accepted.  Thereafter, Mrs. Harris executed a
satisfaction of judgment for the deliberate intention claims,
which is attached as an exhibit to the motion.  According to
Onyx, counsel for the estate of Mrs. Harris is holding these
proceeds in an escrow account until Ms. Stamper's objections can
be resolved.

With respect to the portion of the settlements between Mrs.
Harris and B&W and Mrs. Harris and the power company defendants
for which Onyx is responsible, Onyx indicates that it tendered
these monies to Mrs. Harris; however, she requested that Onyx
hold the monies in anticipation of using some portion of the

6

D.  **Ms. Stamper's Motion to Intervene**

Ms. Stamper seeks to intervene in this action asserting

that

(1) pursuant to W. Va. Code § 23-4-2(b) Ms. Stamper is the only person entitled to recover deliberate intention damages from Onyx inasmuch as she is wholly dependent upon Jamie Harris; (Mot. to Intervene ¶ 7.)

(2) in light of her financial dependence and relationship with Mr. Harris, Ms. Stamper is the primary beneficiary under the Wrongful Death Statute, W. Va. Code § 55-7-6(b);  (Id. ¶ 8.)

(3) at no time prior to the death of Jamie Harris, were his parents financially dependent upon him; (Id. ¶ 20.)

(4) counsel for Mrs. Harris in her capacity as administratrix acknowledged that Ms. Stamper was a proper beneficiary of the estate of Harris in a letter dated September 23, 2005. (Id. ¶ 32.)

(5) counsel for Ms. Stamper subsequently learned

─────────────────────

settlement proceeds "to fund a structure."  Onyx further indicates that both Mrs. Harris and Ms. Stamper agreed that they would not seek interest on the monies that Onyx is holding, but that counsel for the parties have not executed a stipulation to that effect as counsel for Onyx has suggested.

In her response to Onyx's motion, Mrs. Harris does not dispute any of Onyx's representations and emphasizes the necessity of a hearing for court approval of the wrongful death claims.  Ms. Stamper has not responded to the motion.

To the extent the issues raised in Onyx's motion remain unresolved, they can be more fully addressed at the pre-hearing conference.

of the settlement of the action pending before this court; however, at no time did counsel for the administratrix communicate any settlement discussions or the actual settlements to Stamper or her counsel; (Id. ¶ 34-37.)

(6) Ms. Stamper did not give the administratrix authorization to resolve her claims and the administratrix made no effort to develop the damages of Stamper; (Id. ¶ 38-39.)

(7) Stamper has been advised that counsel for the administratrix has made a written request that most of the monies received for settlement of the estate's wrongful death claims against B&W and the power company defendants be paid in the form of an annuity made payable to Mrs. Harris and her husband; (Id. ¶ 40.)

(8) Ms. Stamper has been defrauded of settlement proceeds to which she is entitled by the action and inactions of the administratrix and her counsel, and counsel for the administratrix has failed to act in the best interest of the estate and its beneficiaries;  (Id. ¶¶ 44, 45.)

(9) Ms. Stamper may intervene in this action inasmuch as she has an interest in this action and none of the parties to the case represent her interests;  (Id. ¶¶ 47, 48.)

Ms. Stamper requests the court (1) permit her to intervene in this matter; (2) require the administratrix and her counsel to make an accounting of all settlement funds received to date and those upon which an agreement has been reached, but not yet received; (3) require any and all proceeds paid to the administratrix and her counsel be placed in escrow with the Clerk of the United States District Court; (4) direct that the

administratrix be removed from this action; (5) direct that any monies paid by Onyx be paid to Stamper; (6) direct that any monies paid to the administratrix be held in escrow until such time as Stamper can assert a claim that the administratrix has been negligent in the prosecution of her claim; (7) award Stamper equitable relief as a result of the deceitful acts of the administratrix and her counsel; and (8) no attorney fees of the estate be charged to Stamper.

Mrs. Harris responded in her capacity as administratrix of the estate and in her individual capacity.[5]  While contesting Ms. Stamper's claim that she is the primary beneficiary, Mrs. Harris acknowledges that Stamper's intervention in this action is appropriate as she is a beneficiary that may be entitled to share in the recovery of the funds received from the settlement of the

---

[5] Neither the caption of the original complaint or the first amended complaint indicates that Mrs. Harris is asserting a claim in her individual capacity; however, the opening sentence of the first amended complaint states "COMES NOW the Plaintiff, Norma Jean Harris, individually, and as the Administratrix of the Estate of Jamie Brooks Harris, and for her Amended Complaint does state as follows . . ."  Presumably, Mrs. Harris has not sought to intervene in this action in her individual capacity insofar as the first amended complaint contains this language.

On February 2, 2007, Robert V. Berthold, Jr., and Christina Smith entered an appearance on behalf of Mrs. Harris.  These attorneys are representing Mrs. Harris in her individual capacity, while Brent Kesner remains lead counsel for Mrs. Harris in her capacity as administratrix of the estate.

estate's wrongful death claims.  Mrs. Harris, however, denies
that Ms. Stamper is entitled to any of the settlement monies Onyx
has agreed to pay to resolve the deliberate intention claims.
Mrs. Harris requests the court grant Ms. Stamper's motion to
intervene only for the limited purpose of permitting her the
opportunity to demonstrate whether she is entitled to share in
the wrongful death recovery and otherwise deny the motion.

        More specifically, Mrs. Harris contends that (1) she
and her husband are the only persons entitled to recover
deliberate intention damages and Ms. Stamper lacks standing to
assert a deliberate intention claim under West Virginia law;  (2)
Ms. Stamper's request that the court direct an accounting for the
wrongful death damages is premature inasmuch as Ms. Stamper has
not established a right to any settlement monies; (3) she has
acted properly as administratrix and further believes her counsel
has acted properly in advising her in her role as administratrix;
and (4) escrow of the funds is not needed in that the court can
simply approve the distribution of the deliberate intention
damages to her and her husband and then decide how the wrongful
death damages are to be distributed.

**E.   Onyx's Response and Accompanying Motion**

Onyx responded to Ms. Stamper's motion to intervene and within its response further moves to enforce and consummate all the settlements reached in this action.  It states that it does not object to Ms. Stamper intervening in this litigation for the purpose of asserting a claim against the settlement proceeds; however, it vehemently objects to the court setting aside any of the settlements reached in this action.  Onyx contends that Mrs. Harris, in her capacity as administratrix, had the power to negotiate and settle claims of the estate.  Onyx further observes that even if Ms. Stamper does not consent to the settlements reached by the administratrix and the defendants, she would nevertheless be bound by those settlements should the court approve them.

With respect to the deliberate intention claim asserted against it, Onyx maintains that the monies it agreed to pay were in exchange for the settlement of the claims of any and all potential beneficiaries of the estate of Jamie Harris, including Ms. Stamper.  Onyx requests that the court hold a hearing, direct distribution of the settlement proceeds, and then (1) ratify the compromise and settlements between the estate and all defendants; (2) authorize the defendants to make the final settlement

payments; (3) permit the entry of an order of satisfaction with regard to the Rule 68 Offer of Judgment made on behalf of Onyx and accepted by the estate; (4) permit the estate to execute a valid release of all claims in favor of the defendants; and (5) permit the entry of an order of dismissal with prejudice of all the defendants in this action.

In its surresponse, Onyx explains that it agreed with counsel for Ms. Stamper not to take a position with regard to Ms. Stamper's status as a proper beneficiary of the estate of Jamie Harris under either the wrongful death statute or the deliberate intention statute. Counsel for Onyx further represents that

> In exchange for said cooperation through silence, counsel for Miranda Stamper advised Miranda Stamper would object only to the distribution of compromise and settlement proceeds, but not to the compromise and settlements themselves. It was further agreed that Miranda Stamper would dismiss her suit pending in the Circuit Court of Kanawha County [] and seek compensation for her damages, if any, allegedly caused by the death of Jamie Harris through the above styled civil action.[6]

Onyx insists that while it prefers not to take a position with regard to Ms. Stamper's status as a beneficiary, it has not waived its right to object to the status of any and all

---

[6] This purported agreement was not disclosed to the court during the January 3, 2007, pretrial conference in which the parties represented that the entirety of this action had settled and a dismissal order would soon be presented to the court.

beneficiaries should the court find that Mrs. Harris did not have the authority to accept Onyx's offer of judgment.

F.   **Petitions of Mrs. Harris, B&W, and the Power Company Defendants**

In B&W's petition seeking court approval of the settlement of the wrongful death claims asserted by the estate of Mr. Harris against it, B&W requests that the court hold a hearing for the purpose of taking the testimony of all potential beneficiaries and ordering the distribution of the settlement proceeds.  B&W also observes that the court will need to make disbursements for attorneys' fees and costs incurred.  The power company defendants request the same relief in their petition seeking court approval of the settlements of the wrongful death claims asserted against.

The petition of Mrs. Harris, filed in her capacity as administratrix, represents that her acceptance of Onyx's offer of judgment and her subsequent acceptance of Onyx's payment of "agreed costs" is a fair and reasonable resolution of the estate's deliberate intention claims, and in the best interests of the estate and the beneficiaries of the estate's deliberate intention claims.  Mrs. Harris requests the court (1) approve the estate's acceptance of the Onyx offer of judgment and Onyx's

13

agreed payment of $120,000 in costs;[7] (2) approve her delivery of satisfactions of judgment to Onyx; and (3) authorize Mrs. Harris to pay out of the proceeds received from Onyx attorney fees of $448,000[8] and pro rata expenses of $76,555.81.

## G.  Ms. Stamper's Action Against Mrs. Harris

In her supplement to her joinder in Onyx's motion to file a surresponse, Mrs. Harris represents that Ms. Stamper instituted an action against her in her capacity as administratrix of the estate and in her individual capacity. The complaint, which is attached as an exhibit to the supplement filed by Mrs. Harris, indicates that the action was brought on February 16, 2007, in the Circuit Court of Jackson County, West Virginia.  The Stamper complaint in state court requests that (1) Mrs. Harris be enjoined from taking any action to resolve any claim of Stamper or the estate until such time as the court can hear evidence as to whether the defendant should be removed as

---

[7] It was first represented that the $120,000 sum was for payment of "costs, interest, and attorney fees." (Parties' Proposed Order, Docket Entry #352.)  Mrs. Harris now represents the $120,000 to be "payment of . . . costs associated with the accepted Offer of Judgment." (Harris Petition at 3.)  While Mrs. Harris submitted some briefing in support of her position that the offer of judgment was irrevocable for a period of ten days, it is unclear how Mrs. Harris incurred the $120,000 in costs.

[8] The sum of $448,0000 represents 40% of $1,120,000.

administratrix; (2) a hearing be held to determine whether the
administratrix should be removed for violating her fiduciary duty
to Stamper; and (3) the court award her compensatory and punitive
damages for the breach of the fiduciary duty committed by Mrs.
Harris.

Mrs. Harris contends that Stamper "renege[d] on her
agreement with Onyx to allow this court to resolve the Estate's
claims."  She further insists that Stamper's institution of this
action "is intended solely to dispute this Court's authority,
harass the Administratrix, increase the Estate's legal expense,
and impede resolution of the Estate's claims."  The only relief
sought by Mrs. Harris in the supplement is that the court "take
judicial notice of Ms. Stamper's flouting of the law."

## II.

An issue not presented by the parties is whether the
court may entertain Ms. Stamper's motion to intervene under the
probate exception to federal jurisdiction.  Under this exception
a federal court may "not interfere with the probate proceedings
or assume general jurisdiction of the probate or control of the
property in the custody of the state court."  Markham v. Allen,
326 U.S. 490, 494 (1946)(internal citation omitted).  The

15

application of the probate exception, which had been applied
broadly by some federal courts, was recently narrowed by the
United States Supreme Court.  <u>Marshall v. Marshall</u>, 547 U.S. 293,
126 S.Ct. 1735 (2006).  In <u>Marshall</u>, the Supreme Court observed
that

> [T]he probate exception reserves to state probate
> courts the probate or annulment of a will and the
> administration of a decedent's estate; it also
> precludes federal courts from endeavoring to dispose
> of property that is in the custody of a state probate
> court.  But it does not bar federal courts from
> adjudicating matters outside those confines and
> otherwise within federal jurisdiction.

<u>Id.</u> at 1748.

Even prior to the decision in <u>Marshall</u>, commentators
recognized that "[i]t generally is not considered an interference
with state proceedings for a federal court to declare whether a
party has the right to share in an estate . . . [and] federal
courts will entertain suits by claimants to establish a right to a
distributive share of an estate."  <u>See</u> 13B Charles A. Wright,
Arthur R. Miller, and Edward H. Cooper, <u>Federal Practice and
Procedure</u> § 3610 (3rd ed. 1998).  Moreover, at least one circuit
court of appeals has found the probate exception to federal
jurisdiction to be inapplicable where the assets at issue were in
the control of the defendants rather than the probate court.
<u>Glickstein v. Sun Bank/Miami, N.A.</u>, 922 F.2d 666, 673 (11th Cir.

16

1991).

Here, federal jurisdiction is otherwise present, and Ms. Stamper seeks in essence to establish a claim against the recovery realized by the administratrix from the causes of action pursued in this court wherein those entitled to share in the recovery may be determined and their respective shares fixed as to amount.  The court accordingly concludes that it is proper to exercise jurisdiction over the dispute between Ms. Stamper and the administratrix as to whether Ms. Stamper may assert and recover upon such a claim.

III.

A.  Ms. Stamper's Entitlement to Monies from the Estate's Settlement of the Wrongful Death Claims

Under West Virginia law every wrongful death action must be brought by and in the name of the personal representative of the decedent.  W. Va. Code § 55-7-6(a).  Citing this statute, the West Virginia Supreme Court has recognized that the personal representative owes a fiduciary obligation to the beneficiaries of the deceased since the personal representative is only a nominal party and any recovery passes to the beneficiaries designated in the wrongful death statute and not to the decedent's estate.

17

<u>McClure v. McClure</u>, 403 S.E.2d 197, Syl. Pt. 4 (W. Va. 1991).

Under West Virginia Code § 55-7-6(b) the court in a wrongful death action

> [M]ay direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section.  If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution . . .

West Virginia Code § 55-7-7 provides in pertinent part that

> The personal representative of the deceased may compromise any claim to damages arising under section five of this article before or after [an] action [is] brought. [ . . .]  Upon approval of the compromise, the court shall apportion and distribute such damages, or the compromise agreed upon, after making provisions for those expenditures, if any, specified in subdivision (2), subsection (c), section six of this article, in the same manner as in the cases tried without a jury.

This court has recognized that an administratrix is without authority to bind adult beneficiaries to a wrongful death settlement absent their consent.  <u>Stone v. CSX Transp., Inc.</u>, 10 F. Supp.2d 602, 605 (S.D. W.Va. 1998).  The court in <u>Stone</u>

18

further observed that

> [T]here are two factors that must be present for an
> executrix to settle a wrongful death action without
> judicial approval.  First, the beneficiaries must be
> adults.  Second, the adult beneficiaries must manifest
> their consent to the agreement by knowingly executing
> a release of their claims.  Without the presence of
> both factors, a wrongful death settlement agreement
> cannot bind a beneficiary in the absence of judicial
> approval.

Id.  Indeed, it was recognized in Stone that the failure of a

personal representative to perform under the settlement agreement

without first seeking court approval is negligence.  Id. at 606.

Here, Mrs. Harris, in her capacity as administratrix of

the estate of Jamie Harris, was acting on behalf of any

beneficiaries under the wrongful death statute.[9]  Furthermore,

the parties are in agreement that Ms. Stamper should be permitted

to intervene in this action to seek a portion of the sums

received in settlement of the wrongful death claims inasmuch as

she is a potential beneficiary that could be entitled to receive

those benefits.  In view of the foregoing, the court finds that

the intervention of Ms. Stamper is proper for this purpose.  The

---

[9] B&W represents that it believes the potential
beneficiaries of the settlement of the wrongful death claims are
Mr. and Mrs. Harris; Mark Rhoades, a sibling of Jamie Harris; and
Ms. Stamper, the fiancee of Jamie Harris.  In her briefing, Ms.
Stamper asserts that both her mother and brother are also
beneficiaries of the estate of Jamie Harris.

19

court further finds that inasmuch as the entirety of those who may be potential beneficiaries have not consented to the settlement of the wrongful death claims a hearing is necessary to determine to whom and in what amount the monies received in settlement of the wrongful death claims are to be distributed.

B.  <u>Beneficiaries of the Deliberate Intention Claims</u>

The West Virginia Supreme Court of Appeals has observed that "the persons who can potentially recover 'deliberate intention' damages from a decedent's employer are the persons specified in W. Va. Code, 23-4-2(c) [2005]: the employee's widow, widower, child, or dependent of the employee." <u>Savilla v. Speedway Superamerica, LLC</u>, 639 S.E.2d 850, Syl. Pt. 3 (W. Va. 2006).  The definition of "dependent" is found in West Virginia Code § 23-4-10(d) which provides that

> "Dependent", as used in this chapter, means a widow, widower, child under eighteen years of age, or under twenty-five years of age when a full-time student as provided in this section, invalid child or posthumous child, who, at the time of the injury causing death, is dependent, in whole or in part, for his or her support upon the earnings of the employee, stepchild under eighteen years of age, or under twenty-five years of age when a full-time student as provided in this section, child under eighteen years of age legally adopted prior to the injury causing death, or under twenty-five years of age when a full-time student as provided in this section, father, mother, grandfather or grandmother, who, at the time of the injury causing death, is dependent, in whole or in

20

> part, for his or her support upon the earnings of the
> employee; and invalid brother or sister wholly
> dependent for his or her support upon the earnings of
> the employee at the time of the injury causing death.

Ms. Stamper contends that she is entitled to recover under this statute because she was "wholly dependant [sic] upon the decedent, Jamie B. Harris;" however, she is the fiancee, not widow, of Mr. Harris and does not otherwise qualify as a "dependent" under W. Va. Code § 23-4-2(c).  Thus, Ms. Stamper may not share in the estate's recovery of deliberate intention damages.  Conversely, the parents of Jamie Harris could qualify as dependents if they were dependent in whole or in part upon his earnings.[10]  According to Mrs. Harris, both she and her husband qualify as "dependents" of Jamie Harris under W. Va. Code § 23-4-2(c).[11]

---

[10] Mrs. Harris represents that other than herself and her husband there are no other persons who meet the statutory definition of "dependent."  Presumably, the brother of Jamie Harris was not an invalid dependent for his support on the earnings of Jamie Harris.

[11] The amended complaint, however, only alleges that Norma Jean Harris was dependent on the earnings of Jamie Harris.  When on January 3, 2007, the parties represented to the court that the entirety of this action had been resolved, there was and remains pending a motion filed November 20, 2006, in which plaintiff sought leave to file a second amended complaint.  The proposed second amended complaint also does not allege that any person other than Mrs. Harris was dependent upon the earnings of Jamie Harris.

Ms. Stamper attempts to escape this conclusion arguing that "West Virginia Code § 23-4-10 is clearly related to the class of person who may collect death benefits" and "death benefits . . . are easily distinguishable from a personal injury claim and/or wrongful death as created and defined by West Virginia Code § 23-4-2." Ms. Stamper's attempt to limit the definition of "dependent" found in § 23-4-10(d) fails. The unambiguous language of § 23-4-10(d) provides "'[d]ependent,' as used in this chapter, means . . ." (emphasis supplied). Section 23-4-2(c) which contains the term "dependent" is a section within Chapter 23. Thus, the definition of "dependent," as the term is used in § 23-4-2(c), is found in § 23-4-10(d). Under this unambiguous definition of "dependent" Ms. Stamper is not entitled to recover deliberate intention damages.

Ms. Stamper next argues that the West Virginia Supreme Court has taken a "broader interpretation of the 'class of persons' who could take than the very narrow aspect of West Virginia Code § 23-4-10." In support, Ms. Stamper observes that in Savilla an adult child was permitted to recover deliberate intention damages after the death of her mother, despite the fact that § 23-4-10 defines a child as "under eighteen years of age, or under twenty-five years of age when a full-time student."

This contention is similarly without merit.  Ms. Stamper's position appears to be based on the erroneous assumption that the definition of "child" can be found in § 23-4-10(d).  However, the term "child" is not defined in § 23-4-10(d); rather, it is the term "dependent" that is defined.  Moreover, the adult child in <u>Savilla</u> was not permitted to recover deliberate intention damages as a child who could take as a "dependent" under § 23-4-10.  Instead, the West Virginia Supreme Court recognized that the adult child in <u>Savilla</u> was permitted to take under § 23-4-2(c), which clearly provides that a "child" of an employee has a deliberate intention cause of action against an employer in the event of the employee's death.  <u>Savilla</u>, 639 S.E.2d at 854.

Perhaps acknowledging the weakness of her arguments for recovery by her of deliberate intention damages under West Virginia law, Ms. Stamper observes that only Onyx has standing to object to her claim of entitlement to the deliberate intention damages and "instead of testing the legality of Ms. Stamper's standing the defendant Onyx decided to make an offer of judgment of $1,000,000."  Despite Ms. Stamper's suggestions to the contrary, Onyx's decision to make an offer of judgment to settle the deliberate intention claims and its peculiar arrangement with

Ms. Stamper under which it agreed not to take a position with respect to Ms. Stamper's entitlement to deliberate intention damages, do not serve to alter the conclusion that Ms. Stamper is not entitled to recover deliberate intention damages.  Onyx presumably could have sought and obtained the dismissal of Ms. Stamper's deliberate intention claim in the state court action; however, it has elected not to do so.  The fact remains that Mr. and Mrs. Harris are the only persons entitled to recover deliberate intention damages.

C.   **Alleged Breach of Fiduciary Duty and Removal of Administratrix**

Under West Virginia law, "[w]hen a person dies intestate the jurisdiction to hear and determine the right of administration of his estate shall be in the county court, or clerk thereof during the recess of the regular sessions of such court, which would have jurisdiction as to the probate of his will, if there were one." W. Va. Code § 44-1-4.  In addition to asserting that she did not breach any fiduciary duty to Ms. Stamper, Mrs. Harris contends that a federal district court is without authority to remove her as administratrix and simply cites to this statute.  Ms. Stamper, without citing any supporting authority, responds by asserting that a federal district court has the same power as that available to a

24

circuit court of West Virginia and could remove Mrs. Harris as administratrix.  Alternatively, Ms. Stamper asserts that the court could issue a stay of any settlement pending her filing of a petition before either a state circuit court or the county commission which appointed Mrs. Harris.

        While this court is plainly vested with the authority to control the progress of this case by issuing the requested stay, it is quite clearly without jurisdiction, and accordingly declines, to meddle in the appointment or removal of the administratrix, an act that is reserved to the state probate court.  See Jones v. Harper, 55 F. Supp.2d 530 (S.D. W.Va. 1999)(Goodwin, J.), holding that

> The removal and appointment of a personal
> representative clearly would interfere with the
> administration of the estate.  There is nothing more
> central to the administration of the estate than the
> appointment of an administrator.  While state circuit
> courts may remove personal representatives for
> failing to pursue wrongful death claims, the probate
> exception prevents this federal Court from
> interfering with an open state probate proceeding by
> removing and directing the appointment of a new
> personal representative.

at 533 (internal citations omitted).

        The court in Harper further observed that a determination as to whether a personal representative breached the fiduciary duty did not directly interfere with the administration of the estate.  Id. at 534.  Similarly, subsequent

25

to the Supreme Court's decision in <u>Marshall</u>, at least one circuit court of appeals has observed that a breach of fiduciary duty claim arising out of the alleged improper administration of an estate is not barred by the probate exception because it does not request that the court administer the estate; rather, it seeks only to impose tort liability.   <u>Jones v. Brennan</u>, 465 F.3d 304, 307-08 (7th Cir. 2006).   The court concludes that it is proper to resolve the question of whether Mrs. Harris has breached her fiduciary duty to Ms. Stamper inasmuch as it does not directly interfere with the administration of the estate.[12]

Inasmuch as (1) this case has been pending before the court since October 5, 2005, (2) the parties apprised the court on January 3, 2007, of the proposed settlement of all matters in dispute following which multiple petitions to approve the settlements have been filed, and (3) the amount of the proposed settlements are substantial, the court declines to delay these proceedings while Ms. Stamper pursues the relief which she seeks in state court on what may be tenuous grounds.

---

[12] The facts underlying the breach of fiduciary duty claim appear to be undisputed and the court could seemingly resolve this claim as a matter of law.

26

D.   <u>Accounting</u>

Ms. Stamper further seeks an accounting of all settlement funds.  Inasmuch as Ms. Stamper is not entitled to receive funds from the settlement of the deliberate intention claims she is not entitled to receive an accounting of the receipt by Mrs. Harris of funds from the settlement of these claims.  As the court has observed and defendants concede, Ms. Stamper may be a beneficiary with respect to the wrongful death claims and would be entitled to an accounting if she can establish her entitlement settlement monies from these claims. Inasmuch as no settlement proceeds appear to have been distributed in exchange for a release of the wrongful death claims and inasmuch further as Ms. Stamper has not yet established her entitlement to these monies, the court finds that it would be premature, at this stage, to order an accounting for the settlement of the wrongful death claims.

E.   <u>Approval of Settlements</u>

The defendants in this action seek the approval of the settlements reached with Mrs. Harris.  The West Virginia Supreme Court of Appeals has cautioned that

> [R]esolving the issues that arise when one beneficiary
> in a wrongful death case wishes to settle their claim

27

> against a defendant requires a complex balancing act by
> the court.  The development of a full record and a
> careful weighing of all of the applicable law and equity
> by the court is a necessity.

Savilla, 639 S.E.2d at 857.  This court has further found that

fairness dictated against the enforcement of a wrongful death

settlement agreement where, among other things, none of the non-

party beneficiaries (1) participated in the negotiation that

resulted in the settlement, (2) consented to the settlement

agreement, (3) were aware that a settlement agreement had been

entered.[13]  Stone, 10 F. Supp.2d at 606-07.  All of the defendants

appear to be in agreement that the court ought not approve the

settlements between Mrs. Harris and the defendants until after a

hearing is held.  Accordingly, a hearing is necessary prior to the

resolution of the pending petitions seeking enforcement of the

settlements.

_____

[13] In Stone, unlike this case, the representative of the
estate also repudiated the settlement agreement shortly after it
had been reached.  Id. at 606.  Nevertheless, the court observed
that

> [O]ther non-party beneficiaries may be injured if the
> Court enforces the settlement agreement.  Again,
> wrongful death actions exist for the benefit of the
> beneficiaries and not the estate.  Hence, the law and
> public policy strongly favor protecting the rights of
> the beneficiaries.  Under the circumstances in the
> instant case, it is unfair to enforce a wrongful death
> settlement agreement against beneficiaries who did not
> consent to the agreement.

Id. at 607.

28

IV.

In view of the foregoing, it is ORDERED that Ms.
Stamper's motion to intervene be, and it hereby is, granted only
to the extent Ms. Stamper seeks to intervene in this action for
the purposes of recovering a portion of the monies to be paid for
the settlement of the wrongful death claims and asserting a breach
of fiduciary duty claim against Mrs. Harris and the motion is
otherwise denied.

It is further ORDERED that a pre-hearing conference
shall be held at 4:00 p.m. on May 11, 2007, with respect to the
motion of Onyx seeking to enforce and consummate the settlement,
the petitions noted on page two of this memorandum opinion and
order, and, if necessary, Onyx's motion seeking to stay interest.

Lead counsel for all parties are directed to appear in
person.

The Clerk is directed to forward copies of this
memorandum opinion and order to all counsel of record.

DATED:  May 1, 2007

John T. Copenhaver, Jr.
United States District Judge

29